## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

In re:

ROGER DALE JENKINS, JR.
ANGELA LOUISE JENKINS,

              Debtor(s).

Chapter 13

Case No. 13-15204-JDW

## MOTION FOR ABANDONMENT AND RELIEF FROM AUTOMATIC STAY (REAL PROPERTY) OR IN THE ALTERNATIVE ADEQUATE PROTECTION

BANK OF AMERICA, N.A. ("Movant") hereby moves this Court for abandonment, pursuant to 11 U.S.C. § 554, and relief from the automatic stay, pursuant to 11 U.S.C. § 362, or in the alternative for adequate protection with respect to certain real property of the Debtor(s) having an address of 5731 Sparrow Run, Olive Branch, MS 38654 (the "Property"), for all purposes allowed by the Note (defined below), the Deed of Trust (defined below), and applicable law, including but not limited to the right to foreclose. In further support of this Motion, Movant respectfully states:

1.      A petition under Chapter 13 of the United States Bankruptcy Code was filed with respect to the Debtor(s) on December 17, 2013.

2.      A Chapter 13 Plan was confirmed on August 12, 2014.

3.      The Debtor(s) has/have executed and delivered or is/are otherwise obligated with respect to that certain promissory note in the original principal amount of $153,784.00 (the "Note"). A copy of the Note is attached hereto as Exhibit A. Movant is an entity entitled to enforce the Note.

4.      Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") of the Debtor(s) under and with respect to

the Note and the Deed of Trust are secured by the Property and the other collateral

described in the Deed of Trust.  A copy of the Deed of Trust is attached hereto as Exhibit

B.

    5.       The Plan calls for the Debtor(s) to surrender the Property.

    6.       Bank of America, N.A. services the loan on the Property referenced in this

Motion.  In the event the automatic stay in this case is modified, this case dismisses,

and/or the Debtor(s) obtain(s) a discharge and a foreclosure action is commenced on the

mortgaged property, the foreclosure will be conducted in the name of Movant.  Movant,

directly or through an agent, has possession of the Note.  The Note is either made payable

to Movant or has been duly endorsed.

    7.       As of the 11/13/2014, the outstanding Obligations are:

| Unpaid Principal Balance | $147,161.74 |
|---|---|
| Unpaid, Accrued Interest | $33,050.16 |
| Costs | $10,640.35 |
| **Less**:  Partial Payments | **($30.00)** |
| Minimum Outstanding Obligations | $190,822.25 |

    8.       The following chart sets forth the number and amount of post petition

payments due pursuant to the terms of the Note that have been missed by the Debtor(s) as

of 11/13/2014.

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 11 | 1/1/14 | 11/1/14 | $1,199.10 | $13,190.10 |
| | | | | |
| Less post petition partial payments (suspense balance): | | ($0.00) | | |

**Total Post petition Payments**: $13,190.10[1]

---

[1] The total payments due pursuant to the terms of the Note set forth in this paragraph do not necessarily
represent all of the postpetition arrearages.  The total only represents the sum of the missed payments

9.      In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $350.00 in legal fees and $176.00 in costs. Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

10.     Cause exists for relief from the automatic stay for the following reasons:

(a)     Movant's interest in the Property is not adequately protected.

(b)     Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor(s) has/have little or no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

(c)     The Movant is entitled to an order deeming the Property abandoned by the Trustee as an asset of the bankruptcy estate, pursuant to 11 U.S.C. § 554.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.      Relief from the stay for all purposes allowed by the Note, the Deed of Trust, and applicable law, including but not limited to allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2.      That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

---

scheduled pursuant to the Note less any partial payments being held.  To obtain the total postpetition arrearages you would need to add to such total (i) any allowable postpetition fees and expenses and (ii) advances for taxes and insurance that are not otherwise covered by escrow amounts in the scheduled payments for impounded loans. The total set forth in this paragraph represents only the postpetition principal, interest, and escrow (if any) amounts that are, as of 11/13/2014, due but not paid, less any partial payments or suspense balance.  It cannot be relied upon as a payoff or reinstatement amount. The postpetition delinquency/reinstatement amount is set forth in the Declaration In Support Of Motion For Relief From Automatic Stay filed contemporaneously herewith.

3.      That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

4.      That the Property be deemed abandoned by the Trustee as an asset of the
bankruptcy estate effective upon entry of the Court's order.

5.      For such other relief as the Court deems proper.

Movant further requests that upon entry of an order granting relief from stay, it be
exempted from further compliance with Fed. Rule Bankr. P. 3002.1 in the instant
bankruptcy case.

In the alternative, Movant requests that this Court enter an order providing
Movant with adequate protection of its interests in the Property.

RESPECTFULLY SUBMITTED
MORRIS AND ASSOCIATES
2309 Oliver Road
Monroe, Louisiana 71201
(318) 330-9020

Michael Jedynak  (Bar# 103014)
ATTORNEYS FOR MOVANT

## UNITED STATES BANKRUPTCY COURT
### NORTHERN **DISTRICT OF MISSISSIPPI**

IN RE: ROGER DALE JENKINS, JR.                    CASE NO.:13-15204-JDW
ANGELA LOUISE JENKINS                             CHAPTER 13

### **CERTIFICATE OF SERVICE**

I, Michael Jedynak, hereby certify that I have notified the following interested

parties of the Motion for Relief filed by BANK OF AMERICA, N.A. as reflected on the

foregoing notice.

> Roger & Angela Jenkins
> 5731 Sparrow Run
> Olive Branch, MS 38654
>
> Robert T. Cornelius, Sr.
> Attorney at Law
> bob@corneliuslawfirm.com
>
> Locke D. Barkley
> Trustee
> sbeasley@barkley13.com
>
> Office of U. S. Trustee
> USTPRegion05.AB.ECF@usdoj.gov

By electronic transmission or by mailing this notice and a copy of the Motion for Relief

filed herein by United States Mail, first class, postage prepaid and properly addressed, all on

this the 19th day of November 2014.

> MORRIS AND ASSOCIATES
> 2309 Oliver Road
> Monroe, Louisiana 71201
> (318) 330-9020
>
> _____
> Michael Jedynak  (Bar# 103014)
> ATTORNEYS FOR MOVANT

| Exhibit |
|:---:|
| A |

Loan Number: ████████████

# NOTE

FHA CASE NO.

████████████

**NOVEMBER 16, 2007**
[Date]

**5731 SPARROW RUN, Olive Branch, Mississippi 38654**
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **MAGNA BANK F/K/A/ 1ST TRUST BANK FOR SAVINGS, FSB, A FEDERAL SAVINGS BANK**

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of **ONE HUNDRED FIFTY-THREE THOUSAND SEVEN HUNDRED EIGHTY-FOUR AND 00/100** Dollars (U.S.$ **153,784.00** ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **SIX AND 125/1000** percent ( **6.125** %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A)  Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **JANUARY 1, 2008** . Any principal and interest remaining on the first day of **DECEMBER 1, 2037** , will be due on that date, which is called the "Maturity Date."

(B)  Place

Payment shall be made at **P.O. BOX 17257, MEMPHIS, TENNESSEE 38187-0257**

or at such other place as Lender may designate in writing by notice to Borrower.

(C)  Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ **934.41** . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D)  Allonge to this Note for Payment Adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

☐ Growing Equity Allonge          ☐ Graduated Payment Allonge

☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**MULTISTATE FHA FIXED RATE NOTE  (6/96)**
Borrower Systems, Inc. (800) 840-1362

Page 1 of 2

**6.   BORROWER'S FAILURE TO PAY**

(A)    Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR AND 000/1000**                                                                    percent (     **4.000 %**) of the overdue amount of each payment.

(B)    Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C)    Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.   WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Note.

_____ (Seal)                    _____ (Seal)
ROGER D JENKINS JR            -Borrower                                                    -Borrower

_____ (Seal)                    _____ (Seal)
                             -Borrower                                                    -Borrower

_____ (Seal)                    _____ (Seal)
                             -Borrower                                                    -Borrower

PAY TO THE ORDER OF:
WITHOUT RECOURSE      Countrywide Bank, FSB

MAGNA BANK F/K/A/ 1ST TRUST BANK FOR SAVINGS, FSB, A FEDERAL SAVINGS BANK

BY: _Mary Walton Allen_
Mary Walton Allen

ITS: Assistant Vice President

MULTISTATE FHA FIXED RATE NOTE (9/96)
Document Systems, Inc. (800) 569-1362                          Page 2 of 2

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS SERVICING LP
WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY ______________
LAURIE MEDER
SENIOR VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS SERVICING LP

BY: *Michele Sjolander*

MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

MISSISSIPPI HOME CORP   Fax:601-718-4672          Nov 16 2007 10:37am P016/018

# Mississippi Home Corporation

## DOWN PAYMENT ASSISTANCE DISCLOSURE
### (TO BE COMPLETED AT CLOSING)
### NOT TO BE RECORDED

I, ROGER DALE JENKINS, JR., understand that the downpayment assistance I have received is a second mortgage financed by the Mississippi Home Corporation.

I also understand that the payment of $51.50 is to be made payable monthly to the Mississippi Home Corporation, with the first payment due on January 1st, 2008.

I have read and understand the payment requirements of the Down Payment Assistance Program.

Borrower's Signature          ROGER DALE JENKINS, JR.          Date   11-16-2007

Co-Borrower's Signature                                        Date

Subscribed and sworn before me this 16 day of November, 2007.

_____   Notary Public

My Commission Expires:

MY COMMISSION EXPIRES NOVEMBER 29, 2010

DPA002

Exhibit
B

11/19/07 10:42:57
BK 2,820 PG 299
DESOTO COUNTY, MS
W.E. DAVIS, CH CLERK

**PREPARED BY AND RETURN TO:**
**REALTY TITLE**
**6397 GOODMAN RD SUITE 109**
**OLIVE BRANCH, MS 38654**
**662-895-8077**

After Recording Return To:
MAGNA BANK F/K/A/ 1ST TRUST BANK FOR SAVINGS, FSB
6525 QUAIL HOLLOW ROAD, 300
MEMPHIS, TENNESSEE 38120
Loan Number:

----------------------- [Space Above This Line For Recording Data] -----------------------

# DEED OF TRUST

FHA CASE NO.

THIS DEED OF TRUST ("Security Instrument") is made on  NOVEMBER 16, 2007.
The grantor is  ROGER D JENKINS JR, A SINGLE MAN

("Borrower").

The trustee is  JEANINE B. SAYLOR

("Trustee").

The beneficiary is  MAGNA BANK F/K/A/ 1ST TRUST BANK FOR SAVINGS, FSB, A
FEDERAL SAVINGS BANK

which is organized and existing under the laws of  UNITED STATES
and whose address is  P.O. BOX 17257, MEMPHIS, TENNESSEE 38187-0257

("Lender").  Borrower owes Lender the principal sum of
ONE HUNDRED FIFTY-THREE THOUSAND SEVEN HUNDRED EIGHTY-FOUR AND 00/100
Dollars (U.S. $ 153,784.00        ).  This debt is evidenced by Borrower's note dated the same date as this
Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and
payable on  DECEMBER 1, 2037      .  This Security Instrument secures to Lender:  (a) the repayment
of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note;  (b) the
payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security
Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the
following described property located in      DESOTO  County, Mississippi:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS
EXHIBIT "A".

which has the address of   5731 SPARROW RUN

Olive Branch          , Mississippi      38654                ("Property Address"):
[City]                                    [Zip Code]

[Street]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.   Payment of Principal, Interest and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2.   Monthly Payment of Taxes, Insurance, and Other Charges.  Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument.  If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.   Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

MISSISSIPPI FHA DEED OF TRUST
6/96

Page 2 of 8

DocMagic ℮Forms  800-649-1362
www.docmagic.com

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or



BK 2,820 PG 302

regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.   Fees.  Lender may collect fees and charges authorized by the Secretary.

9.   Grounds for Acceleration of Debt.

(a) Default.  Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) Sale Without Credit Approval.  Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver.  If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary.  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured.  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within  60 DAYS  from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument.  A written statement of any authorized agent of the Secretary dated subsequent to  60 DAYS  from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.  Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10.   Reinstatement.  Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.  This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.  However, Lender is not required to permit reinstatement if:  (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current

DocMagic Rooms  800-949-1362
www.docmagic.com

BK 2,820 PG 305

foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

BK 2,820 PG 304

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lenders shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give Borrower, in the manner provided in paragraph 13, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at such time and place in    DESOTO         County as Trustee designates in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. If Trustee is requested to cancel this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

| | | | | | |
|---|---|---|---|---|---|
| ☐ | Condominium Rider | ☐ | Graduated Payment Rider | ☐ | Growing Equity Rider |
| ☐ | Planned Unit Development Rider | ☐ | Adjustable Rate Rider | ☐ | Rehabilitation Loan Rider |
| ☐ | Non-Owner Occupancy Rider | ☒ | Other [Specify] | MHC ADDENDUM FOR FHA INSURED LOANS ONLY | |

RJ

BK 2,820 PG 305

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 8 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
ROGER D JENKINS SR        -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

Witness:                                  Witness:

_____                 _____

BK 2,820 PG 306

STATE OF MISSISSIPPI
COUNTY OF _Desoto_

Personally appeared before me, the undersigned authority in and for the said county and state, on this _16_ day of _November_ _2007_, within my jurisdiction, the within named ROGER D JENKINS JR

who acknowledged that he/she/they executed the above and foregoing instrument.

_____
NOTARY PUBLIC

My commission expires:

MY COMMISSION EXPIRES NOVEMBER 29, 2010

This instrument prepared by:
MAGNA BANK F/K/A/ 1ST TRUST
BANK FOR SAVINGS, FSB

To the Chancery Clerk of the                    Judicial District of DESOTO
County, Mississippi:

The real property described herein is situated in the                                        Quarter
of the Quarter of Section                          , Township
Range                                of the                      Judicial District of
DESOTO                               County, Mississippi.

BK 2,820 PG 307

**Legal Description Exhibit**

Lot 87, Section B, Birdsong Subdivision, situated in Section 3, Township 2 South, Range 6 West, as shown on plat of record in Plat Book 61, Page 39 in the Chancery Clerk's Office of DeSoto County, Mississippi.

1/16/08 3:18:45
BK 2,845 PG 290
DESOTO COUNTY, MS
W.E. DAVIS, CH CLERK

# Assignment of Deed of Trust or Mortgage

**FOR VALUE RECEIVED,** Magna Bank F/K/A 1st Trust Bank for Savings, FSB its successors and assigns, hereby assigns and transfers to Mortgage Electronic Registration Systems, Inc., its successors and assigns, P.O. Box 2026, Flint, MI 48501-2026, all rights, title and interest in and to a certain Deed of Trust or Mortgage executed by Roger D. Jenkins Jr, A Single Man

to Magna Bank F/K/A 1st Trust Bank for Savings, FSB, and bearing the date of the 16th day of November, 2007 and recorded on the 19th day of November, 2007 in the office of the Recorder of DeSoto County, State of Mississippi in Book 2820 at Pages 299. Loan Amount is $153,784.00

Signed on the 16th day of November, 2007

Magna Bank F/K/A 1st Trust Bank for Savings, FSB

By: Mary Walton Allen
Assistant Vice President

Maximum principal indebtedness for state recording tax purposes is $-0-."
"Exactly same collateral prior debt. Does not increase principal debt."

State of Tennessee
County of Shelby

On the 16th day of November, 2007, before me, Notary Public, personally appeared Mary Walton Allen, to me known, who being duly sworn, did say that he or she is the Assistant Vice President of Magna Bank F/K/A 1st Trust Bank for Savings, FSB, and that said instrument was signed on behalf of said corporation.

Notary Public

JENELLE G. EISKAN
STATE
OF
TENNESSEE
NOTARY
PUBLIC
COUNTY OF SHELBY

My Comm. Exp. 9-17-2008

Address of Preparer:
Magna Bank F/K/A 1st Trust Bank for Savings, FSB
6525 Quail Hollow, Ste. 300
Memphis, TN 38120

MIN:
MERS Telephone (888)679-6377

DK T BK 3,353 PG 101
DESOTO COUNTY, MS
W.E. DAVIS, CH CLERK

This space for Recorder's use

Recording Requested By:
Bank of America
Prepared By:
Youda Crain
888-603-9011
450 E. Boundary St.
Chapin, SC 29036

When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

Tax ID:

Property Address:
5731 Sparrow Run
Olive Branch, MS 38654-3504

MIN #:                    MERS Phone #:    888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474 does hereby grant, sell, assign, transfer and convey unto BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP whose address is 451 7TH ST.SW #B-133, WASHINGTON DC 20410 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:          MAGNA BANK F/K/A/ 1ST TRUST BANK FOR SAVINGS, FSB, A FEDERAL SAVINGS BANK
Borrower(s):             ROGER D JENKINS JR, A SINGLE MAN
Original Trustee:        JEANINE B. SAYLOR
Date of Deed of Trust: 11/16/2007      Original Loan Amount: $153,784.00
Recorded in DESOTO County,M S on: 11/19/2007, book 2,820, page 299 and instrument number N/A

Property Legal Description:
LOT 87, SECTION B, BIRDSONG SUBDIVISION, SITUATED IN SECTION 3, TOWNSHIP 2 SOUTH, RANGE 6 WEST, AS SHOWN ON PLAT OF RECORD IN PLAT BOOK 61, PAGE 39 IN THE CHANCERY CLERK'S OFFICE OF DESOTO COUNTY, MISSISSIPPI.

Indexing Instructions: Lot(s): 87 Block(s): 3 Subdivision: B Town: 2S

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
9/26/2011

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _Jeanine Abramoff_
Jeanine Abramoff, Assistant Secretary

State of California
County of Ventura

On __9/26/11__ before me, _Violet Thomas-Hicks_, Notary Public, personally appeared Jeanine Abramoff, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _Violet Thomas-Hicks_                    (Seal)
My Commission Expires: _____

VIOLET THOMAS-HICKS
Commission # 1820527
Notary Public - California
Los Angeles County
My Comm. Expires Oct 28, 2012

DocID#

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| In re:<br><br>ROGER DALE JENKINS, JR.<br><br>ANGELA LOUISE JENKINS,<br><br>        Debtor(s). | Chapter 13<br><br>Case No. 13-15204-JDW |

## DECLARATION IN SUPPORT OF
## MOTION FOR RELIEF FROM AUTOMATIC STAY

I, __Sean Lloyd_____, declare under penalty of perjury as follows:

1.      I am a/an __Assistant Vice President__ of Bank of America, N.A. ("BANA") and am authorized to sign this declaration on behalf of BANA. This declaration is provided in support of the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

2.      As part of my job responsibilities for BANA, I have personal knowledge of and am familiar with the types of records maintained by BANA in connection with the loan that is the subject of the Motion (the "Loan") and the procedures for creating those types of records. I have access to and have reviewed the books, records and files of BANA that pertain to the Loan and extensions of credit given to Debtor(s) concerning the property securing such Loan.

3.      The information in this declaration is taken from BANA's business records regarding the Loan. The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of BANA's regularly conducted business activities; and (c) it is the regular practice of BANA to make such records.

4.    The Debtor(s) Roger D Jenkins Jr has/have executed and delivered and/or is/are otherwise obligated with respect to that certain promissory note referenced in the Motion (the "Note"). Pursuant to that certain Deed of Trust referenced in the Motion (the "Deed of Trust"), all obligations of the Debtor(s) under and with respect to the Note and the Deed of Trust are secured by the property referenced in the Motion.

5.    As of 11/13/2014, there are one or more defaults in paying post-petition amounts due with respect to the Note.

6.    As of 11/13/2014, the unpaid principal balance of the Note is $147,161.74.

7.    The following chart sets forth those postpetition payments, due pursuant to the terms of the Note, that have been missed by the Debtor(s) as of 11/13/2014:

| Number of Missed Payments | From | To | Missed Principal and Interest | Missed Escrow (if applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 11 | 1/1/14 | 11/1/14 | $934.41 | $264.69 | $1,199.10 | $13,190.10 |
| | | | | | | |
| Less postpetition partial payments (suspense balance): | | | ($0.00) | | | |

Total:  $13,190.10

8.    As of 11/13/2014, the total postpetition arrearage/delinquency is $13,190.10.[1] This is the amount necessary to cure any post-petition default on or about the date hereof.

---

[1] The total of missed postpetition payments for this impounded loan include any missed escrow payments. Such missed escrow payments include amounts assessed for taxes and insurance and any previously assessed escrow shortage amount (if applicable). To avoid duplication, postpetition advances (if any) made for insurance, real estate taxes, or similar charges are not listed separately to the extent such advances would have been paid from the missed escrow payments. As part of the next annual RESPA analysis, the Bank will determine whether the escrow payments assessed to the debtor (including the missed escrow payments) result in a projected escrow shortage or overage. All rights are hereby reserved to assert or request any escrow amounts in accordance with RESPA and the total postpetiton arrearage/delinquency is qualified accordingly. In addition, the amounts set forth herein do not include any legal fees or expenses of counsel incurred by Movant in connection with seeking the relief requested in the Motion.

9.      Upon information and belief, as of 11/13/2014 the unpaid amount of the

prepetition arrearage and any other amounts to be cured under the confirmed plan is $0.00.[2]

10.     The next payment under the terms of the Note will come due on 12/1/2014 and is

in the amount of $1,199.10.

11.     Attached hereto to the Motion as Exhibit [C] is a postpetition payment history,

which history is incorporated herein by reference.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of

the United States of America that the foregoing is true and correct. Executed this _24th_ day of

November , 2014 .

Name:  Sean Lloyd
Title:  Assistant Vice President

---

[2] As of the date hereof, because the Debtor has indicated an intent to surrender [or abandon] the Property, there is no
applicable prepetition arrearage under a plan with respect to the Property.

**Exhibit C**

# BANKRUPTCY MFR LEDGER

Borrower Name : ROGER D JENKINS, Jr
Address : 5731 SPARROW RUN

Case Number : 13-15204
Bankruptcy Filed Date : 12/17/2013
Data As of : 11/13/2014 08:48 AM

| Description | Post-Petition Date Satisfied | Transaction Date | Funds Received | Amount Due | Escrow | Principal - Interest | Optional Products | Buydown | Post-Petition Partial Amount | Post-Petition Partial Balance |
|---|---|---|---|---|---|---|---|---|---|---|

This ledger is for bankruptcy purposes only. The Bank maintains this ledger for the period during which the debtor is making payments under the terms of a chapter 13 bankruptcy plan. The Bank separately maintains an accounting system that tracks payments according to the terms of the loan documents. That contractually-based system may be used for servicing the mortgage in the event the debtor's bankruptcy case is dismissed, converted to chapter 7, or the automatic stay is lifted prior to the debtor's completing the payments required under the plan.